IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY BLAND, individually and on behalf of a class of all persons and entities similarly situated,<br><br>   Plaintiff<br><br>vs.<br><br>LEGALPULSE HUB INC.<br><br>   Defendant. | Case No.<br><br>2:26-cv-01144 |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices,

1

Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.  "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.  Plaintiff Kelly Bland ("Plaintiff") brings this action under the TCPA alleging that LegalPulse Hub Inc. ("Defendant") called the Plaintiff, whose number is on the National Do Not

Call Registry, including some calls which utilized illegal prerecorded messages. Those calls were made without the call recipient's prior express written consent.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8. Plaintiff Kelly Bland is a person who is a resident of Texas with a Texas area code number.

9. Defendant LegalPulse Hub Inc. is a for-profit company that is a lead generator for personal injury law firms.

## Jurisdiction & Venue

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District.

## The Telephone Consumer Protection Act

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

3

The National Do Not Call Registry

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Residential Lines

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

17. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." 47 U.S.C. § 227(b)(1)(B).

18. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

19. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

<u>The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.</u>

20. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

21. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

22. The regulations also require any caller identification information to "include either CPN or ANI" and "permit any individual to make a do-not-call request during regular business hours." *Id.*

23. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

<u>The Texas Business and Commerce Code</u>

24. Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a

person to "purchase, rent, claim, or receive an item," to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

25. Under the Code, a "telephone call" includes both voice calls and text message calls, including visual messages. *Id*. § 304.002(10).

26. The burden of proof lies on Defendant to show it registered each business location to prove its licensure or on proving an exemption. *Id*. § 302.051.

27. The sale of contacts is not a product or service for which there is an exemption to the Code. *Id*. § 302.051.

28. Defendant is not registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying either "Legal Pulse" or "LegalPulse") as either a DBA or seller name returns no results).

## Factual Allegations

29. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

30. Defendant LegalPulse Hub Inc. is engaged in the business of generating and selling legal leads, including connecting consumers with attorneys for personal injury and accident-related claims.

31. To generate business, Defendant places illegal telemarketing calls to consumers, including calls initiated using prerecorded or artificial voice technology.

32. Plaintiff's residential telephone number is a personal, non-commercial telephone number.

33. The telephone number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

34. Plaintiff uses the telephone number for personal, residential, and household purposes.

35. Plaintiff has never been a customer of Defendant, never did business with Defendant, and never asked or inquired to be a customer of Defendant.

36. Plaintiff never consented to receive telemarketing calls, prerecorded calls, or artificial-voice calls from Defendant.

37. Despite this lack of consent, Plaintiff received multiple telemarketing calls placed using prerecorded or artificial voice technology.

38. All of the calls Plaintiff received from Defendant appeared to originate from "spoofed" or unassigned telephone numbers, which were used to obscure the true origin of the calls.

39. On April 8, 2024, at approximately 11:00 a.m., Plaintiff received a call from telephone number (817) 416-7408.

40. After an initial pause and audible tone, an artificial voice stated it was calling from the "Accidental [sic] Claims Helpline" and solicited Plaintiff regarding legal assistance for car accident injuries.

41. The voice did not sound human and exhibited unnatural pauses, a robotic cadence, and an absence of normal conversational inflection, indicating that the call was initiated using prerecorded or artificial voice technology.

42. Plaintiff stated that she was not interested and requested that the calls stop.

43. On April 12, 2024, Plaintiff received another very similar call from telephone number (206) 875-5750, in which an artificial voice identifying itself as "Ashley" from "Road Traffic Accident" began speaking and then disconnected after several seconds.

44. On May 20, 2024, Plaintiff received another call from an artificial voice identifying itself as "Road Traffic Accident" from telephone number (659) 529-3173, which again disconnected shortly after initiating contact.

45. On June 4, 2024, Plaintiff received yet another call from telephone number (213) 933-3870, again featuring an artificial voice identifying itself as "Ashley" from "Road Traffic Accident."

46. During this call, Plaintiff engaged with the telemarketer and intentionally provided the name "Teresa Fisher"—a unique and false name—to track the call and identify the calling parties.

47. The artificial AI voice asked a series of qualifying questions regarding Plaintiff's alleged car accident and injuries and then transferred the call to an individual who was obviously human identifying himself as a "senior supervisor" named **"Steven Bryant,"** who stated that someone would follow up with Plaintiff regarding her answers.

48. Approximately five hours later, Plaintiff received a call from an individual stating that he was following up on Plaintiff's car accident and asking for "Teresa," the same unique false name previously provided by Plaintiff.

49. The caller began reviewing Plaintiff's prior answers, confirming that the calls were connected and part of the same telemarketing campaign.

50. Due to connection issues, the call was disconnected.

51. At approximately 4:35 p.m. that same day, Plaintiff received a missed call from telephone number (323) 689-6050.

52. Plaintiff returned the call at approximately 4:39 p.m. and was connected with an individual named Tony, who identified himself as being from LegalPulse Hub Inc., a company that connects consumers with attorneys for legal representation, and who was also looking for "Teresa."

53. The call was disconnected, and Plaintiff immediately called back at approximately 4:40 p.m., at which time she again spoke with Tony.

54. Tony provided limited information regarding LegalPulse Hub Inc., stated that he needed to gather additional information, and indicated that Plaintiff would be contacted again after she was vetted.

55. Plaintiff subsequently heard from Tony on two additional occasions during the following week.

56. The calls were all placed for the purpose of encouraging the purchase of legal services and therefore constituted telemarketing.

57. The initial calls were initiated using prerecorded or artificial voice technology, as evidenced by the unnatural sound, robotic cadence, lack of conversational responsiveness, unnatural pauses, and abrupt disconnections.

58. The artificial voices failed to respond appropriately to Plaintiff's statements, lacked emotion, and followed rigid, scripted phrasing inconsistent with human speech, indictive of an AI system.

59.   The subsequent transfer to live agents and follow-up calls demonstrate that the prerecorded calls were designed to qualify consumers automatically using AI and then connect them to Defendant LegalPulse Hub Inc. or its representatives.

60.   The calls all came from the following numbers, and transmitted the caller ID, in the form of both CPN and ANI as follows, which included "spoofed" numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendants' calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Avail? | CNAM Result | Carrier of Record |
|---|---|---|---|
| 8174167408 | Y | ROANOKE, TX | Southwestern Bell |
| 2068755750 | Y | VASHON WA | Nuso |
| 6595293173 | Y | BESSEMER AL | Fractel |
| 2139333870 | Y | LOS ANGELES CA | Fractel |
| 3236896050 | Y | LSANDA CA | Twilio |

61.   In all of the cases of all of the numbers at issue except 323-689-6050, the Defendant appears to have either spoofed them to numbers that are not assigned or to numbers that are assigned to innocent third parties, as will be revealed through discovery, to further hide their location.

62.   With respect to each of the numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours.

63. Nor will anybody texting or calling those telephone numbers receive an alternate number to call to lodge a Do Not Call request during regular business hours.

64. The aforementioned calls to the Plaintiff were unwanted.

65. The calls were nonconsensual encounters.

66. Plaintiff's privacy has been violated by the above-described telemarketing calls.

67. Plaintiff never provided his consent or requested the calls.

68. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded. They were not provided legally compliant opt out mechanisms. Furthermore, the calls unnecessarily used power, network resources, tied up landlines from receiving other calls, and wear and tear.

69. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Statement

70. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

71. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

72. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their residential telephone or any other protected telephone service (3) from or on behalf of the Defendants (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Texas Business and Commerce Code Class:** All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Defendant, (2) at any time during which Defendant was not registered as telephone solicitors with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

73. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

74. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

75. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

76. This Class Action Complaint seeks injunctive relief and money damages.

77. The Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

78. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

79. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

80. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

81. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

82. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

   a. Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

   b. Whether Defendant made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

   c. Whether Defendant's conduct constitutes a violation of the TCPA; and

   d. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

83. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

84. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

85. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents, if any, as discovery may reveal.

86. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

87. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)(1)(B) and/or (b)(1)(A)(iii)) on behalf of the Robocall Class**

88. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

89. The Defendant violated the TCPA by sending or causing to be sent calls to the residential telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

90. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

91. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

92. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

93. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

94. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

95. Defendant's violations were negligent, willful, or knowing.

96. As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

97. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to

telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

### THIRD CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

98. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

100. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

101. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier, by calling without transmitting CPN or ANI, or by calling while transmitting non-compliant CPN or ANI.

102. These violations were willful or knowing.

103. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

104. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION
### Violations of Texas Business and Commerce Code § 302.101
### (On Behalf of Plaintiff and the Texas Business and Commerce Code Class)

105. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

106. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

107. Defendant's violations were negligent, willful, or knowing.

108. As a result of Defendant's violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

17

  B. Injunctive relief prohibiting Defendant from using artificial or prerecorded voices to contact residential telephone lines and other protected lines, except for emergency purposes, in the future;

  C. Injunctive relief prohibiting Defendant from transmitting inaccurate and non-compliant caller ID information in the future;

  D. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

  E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

  F. Damages to Plaintiff and members of the Texas Business and Commerce Code Class pursuant to that statute;

  G. Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this February 22, 2026.

        */s/ Andrew Roman Perrong*
        Andrew Roman Perrong, Esq.
        Perrong Law LLC
        2657 Mount Carmel Avenue
        Glenside, Pennsylvania 19038
        Phone: 215-225-5529 (CALL-LAW)
        Facsimile: 888-329-0305
        a@perronglaw.com